**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Century Surety Company,

        Plaintiff

v.                                  1:25-cv-00425-LM-TSM

Acadia Insurance Company
a/a/o SBP Builders LLC and Acadia Insurance Company
a/s/o New England Truck Tire Centers, Inc. and
a/s/o ADS Properties, Inc.,

        Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ACADIA INSURANCE COMPANY AND SBP BUILDERS LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

NOW COMES Acadia Insurance Company a/a/o SBP Builders LLC and a/s/o New England Truck Tire Centers, Inc. and a/s/o ADS Properties, Inc. ("Acadia"), pursuant to F.R.C.P. 56 and submits the following Memorandum of Law in Support of the Motion for Summary Judgment, stating as follows:

## <u>INTRODUCTION</u>

Century Surety Company ("Century") filed the subject Petition for Declaratory Judgment relative to coverage obligations arising out of its insuring policy issued to SBP Builders LLC ("SBP Builders") and SBP Property Management LLC ("SBP Property Management"). This matter arises out of a fire which took place on March 13, 2023, at 431-433 Cottage Street, Littleton, New Hampshire (the "Premises"). SMF Ex. A, ¶ 9. See also, SMF Ex. C ¶ 12-14. At the time of the fire, SBP Builders leased space at 433 Cottage Street, Littleton, New Hampshire

1

from ADS Properties, Inc. ("ADS"), the building owner. SMF Ex. A, ¶ 11.  See also, SMF Ex. C ¶ 11. ADS is the owner of record of both 431 and 433 Cottage Street, Littleton, New Hampshire. SMF Ex. C, ¶ 8. New England Truck Tire Centers Inc. ("NE Truck") was the tenant of record at 431 Cottage Street, Littleton, New Hampshire. On or about March 3, 2025, Acadia filed a subrogation action against SBP Builders entitled Acadia a/s/o New England Truck v. SBP Builders et. al., which was filed in the United States District Court of New Hampshire, Index No. 25-cv-92 TSM (the "Acadia Action" or "Complaint") to recoup the payments made under the Acadia Policy. SMF Ex. B. On September 18, 2025, Acadia Insurance Company a/s/o New England Truck Tire Centers, Inc. and Acadia Insurance Company a/s/o/ ADS Properties, Inc. and NE Truck and ADS Properties, Inc. filed a Second Amended Complaint against SBP Builders. The Second Amended Complaint added Acadia Insurance Company a/s/o ADS Properties, Inc. and ADS Properties, Inc. ("ADS") as plaintiffs. SMF Ex. C, *generally*.

In the Complaint, it was alleged that on March 13, 2023, SBP Builders was engaging in work at 433 Cottage Street, Littleton, New Hampshire, which involved painting and staining doors and trim woodwork in its woodshop, using Old Masters oil-based wood stain. SMF Ex. C, ¶ 12. While applying the oil-based stain, SBP Builder's employee failed to properly discard oil-saturated stain rags and materials and instead discarded the used materials on the floor along the right-hand wall of its workshop at the Premises. SMF Ex. C, ¶ 13-14.  As a result of the negligent disposal of the materials, a fire broke out at the Premises on March 13, 2023, at approximately 11:00 pm, causing extensive property damage.  SMF Ex. A, ¶ 10. See also, SMF Ex. C, ¶ ¶ 15-16.  Acadia issued a commercial property policy to NE Truck and paid approximately $2,000,000 to NE Truck and ADS for the damage sustained to the properties

located at 431 and 433 Cottage Street, Littleton, New Hampshire. SMF Ex. A, ¶ 12.  See also, SMF Ex. I., Recitals and SMF Ex. G.

The Second Amended Complaint alleges that SBP Builders failed to properly dispose of the rags used in connection with this work which resulted in the rags "self-heating" and igniting causing fire damage to the Premises. SMF Ex. C, ¶¶ 13-15.  The Second Amended Complaint alleged negligence for failure to properly dispose of the rags; failure to properly train, supervise workers; resulting in damage to the building, contents, loss of rents, business income, demolition/clean up. SMF Ex. C, ¶¶ 22-24.  The Second Cause of Action alleged that on or about October 18, 2016, ADS and SBP Builders entered into a Real Estate Lease for the tenancy of 433 Cottage Street, Littleton, New Hampshire. SMF Ex. C, ¶ 26.  Acadia and ADS alleged that they have been subjected to losses, claims, liabilities, and expenses due to SBP Builders' negligence at 433 Cottage Street, Littleton, New Hampshire on March 13, 2023, and they sought "full contractual indemnity and to judgment over and against SBP Builders for its damages." SMF Ex. C, ¶ 27-29.

On May 9, 2025, after the filing of the initial Acadia Action, Century issued a Reservation of Rights letter to SBP Builders detailing its coverage position relating to the damage caused by the fire, advising both SBP Builders and SBP Property Management that "[T]he Century policy provides coverage for the specific operations listed in form CGL 1711 01/20 quoted above for your reference. To the extent that the claim of New England Truck and Tire arises out of any operations performed by you that are not listed on this form, there is no coverage for this claim and Century reserves the right to deny coverage under this provision of the policy."  SMF Ex. E. Century further advised both insureds that "[I]t is Century's information that SBP Builders, LLC has another liability policy with Crum and Forster which is

providing coverage for this claim. As stated above, at this time Century is investigating coverage for this claim and providing SBP Builders, LLC with legal counsel, however, Century reserves the right deny coverage and withdraw that legal counsel should it be confirmed that SBP Builders, LLC has other insurance coverage for this claim." SMF Ex. E. It should be noted that while Century advised it was providing counsel, there is no evidence that any counsel was ever provided to SBP Builders by Century.

On June 4, 2025, a supplemental coverage position letter was issued on behalf of Century to SBP Builders. SMF Ex. F. That supplemental position maintained that Century reserved its right to deny coverage on the basis that the Limitation of Coverage to Designated Operations, Premises or Projects endorsement on the property did not include contracting work as a designated operation on the policy and that therefore coverage may be excluded or not triggered. SMF Ex. F. On July 30, 2025, counsel for Acadia made a "policy limits" demand to defense counsel for SBP Builders. The e-mail correspondence represented the losses to date totaled approximately $2,357,805.99, including uninsured losses, and that a "time-sensitive demand" "was issued to both Crum [&] Forster ("C & F") and Century that they tender policy limits in full and final settlement of this matter." SMF Ex. G. On September 2, 2025, counsel for Century responded to the July 30, 2025 email correspondence and continued to reserve its right to disclaim coverage to SBP Builders with respect to the Acadia Action and noted that Acadia's contention that the Century Policy has $1,000,000 limits of coverage available to SBP Builders was incorrect because any available coverage, which Century disputed, would be subject to the $100,000 policy limits as set forth in **SECTION III-LIMITS OF INSURANCE** of the Century Policy and would be excess to the C&F Policy. SMF Ex. H.

SBP Builders LLC, SBP Property Management, LLC and SBP Investment Property LLC are limited liability companies owned by Stanley Barrows Parker III (jointly referred to as the "Parker LLC's").  SMF Ex. I.  On November 3, 2025, Acadia resolved the Complaint with the Parker LLC's and C&F. SMF Ex. I.  As part of the settlement agreement, Acadia received C&F's $1,000,000 policy limit payment under Policy Number BAK-53731-4 issued to the Parker LLC's. SMF Ex. I.  As part of the settlement agreement, the Parker LLC's agreed to assign to Acadia "any and all of the rights Parker LLC's have or may have in the Century Surety Company policy of insurance number CCP 1096813, with Commercial General Liability Coverage limits of $1,000,000." SMF Ex. I, ¶ 3.  As part of the settlement agreement, the Parker LLC's agreed that "SBP Builder LLC agrees to allow judgment to be entered against them in the Lawsuit in the amount of $2,000,000 and will cause to be filed with the court the stipulated judgment…". SMF Ex. I, ¶ 3.

As part of the settlement agreement, the Parker LLC's stipulated that the three Parker LLC's all worked out of the 433 Cottage Street, Littleton, New Hampshire location. SMF Ex. I, Recitals.  Of the Parker LLC's, SBP Builders LLC stipulated that it was the tenant of ADS at 433 Cottage Street, Littleton, New Hampshire. SMF Ex. I, Recitals.  The release stipulated that the total damages asserted by Plaintiffs was in excess of $2,300,000. SMF Ex. I, Recitals.  Of the damages, ADS and NE Truck sustained in excess of $309,500 in uninsured losses.  SMF Ex. G. The release noted that it was the intent of the Releasors to challenge the legality of Century Surety Company's coverage disclaimer within the context of this Petition for Declaratory Judgment. SMF Ex. I, ¶ 8.  A Stipulation for Entry of Judgment was filed on December 8, 2025, in the amount of $2,000,000.  SMF Ex. J.  This Court issued Judgment against SBP Builders in the amount of $2,000,000 on December 11, 2025, as approved by Chief Judge Samantha Elliot.

SMF Ex. K. Century has continued to deny coverage to Acadia, as assignee of SBP Builders, for the judgment entered against SBP Builders.

The fire caused damage to both properties, including the portion of the building leased to SBP Builders.  Crum & Forester, on SBP Builders behalf, paid Acadia its $1 million policy limit. SMF Ex. I.  SBP Builders' second insurer, Century, has denied coverage based upon the policy's designated operations endorsement and a sublimit for fire damage to premises rented by SBP Builders LLC.   The Century policy was issued not only to SBP Builders but also a companion company, SBP Property Management ("SBP Management").  The Century Declaration page establishes the limits of liability coverage of $2 million subject to a $1 million per occurrence limit.  SMF Ex. D, Commercial General Liability Coverage Part Declarations. The Declaration page establishes there is a $100,000 limit for any one fire/occurrence for damage to premises rented to you.  Id. The insuring agreement states that Century will pay those sums that the insured, SBP Builders or SBP Management, become legally obligated to pay as damages because of property damage to which the insurance applies.  SMF Ex. D, Form Number CG 00 01 04 13, Page 1 of 16.

Century has erroneously denied coverage to SBP Builders and Acadia as assignee of SBP Builders, for damages it is legally obligated to pay as a result of the entry of Judgment against SBP Builders.  The designated operation exclusion endorsement does not preclude coverage because it extends coverage for all real estate property management activities including subcontracted work which necessarily includes painting and staining activities.  Century therefore accepted the risk of loss from fire caused by negligently disposed oily rages because they insured subcontracted work and as demonstrated by the policy declarations, rated the policy based upon subcontractors work.  Pursuant to N.H. R.S.A. 491:22-a, Century bears the burden to

establish that coverage is excluded and it cannot, as a matter of evidence, establish that the activities were not as a result of real estate property management activities, including subcontracted work.  Additionally, coverage for additional operations may be granted if agreed to by Century in writing.  The Century Declaration page is an endorsement to the policy and that endorsement specifically represents that the policy covers the following operations: "Contractors – subcontracted work – in connection with building construction, reconstruction, repair or erection – one or two family dwellings."  In addition, Century has erroneously asserted its coverage limits are reduced to $100,000 based upon an exclusion for damages to "premises rented to you" as the defendants seek fire damage coverage to a premises SBP Builders did not rent.  The defendants accept that coverage to the area rented by SBP Builders is limited to $100,000 but that coverage to the portions of the property not rented by SBP Builders are only limited by the general $1,000,000/$2,000,000 policy limit.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a party's motion for summary judgment, the court must view the entire record in light most favorable to the party opposing summary judgment, including all reasonable inferences in that party's favor.  Pimental v. Dartmouth-Hitchcock Clinic, 236 F.Supp.2d 177, 179 (D.N.H. 2002).

Summary judgment is a procedure that involves shifting burdens between the moving party and the nonmoving parties.  Id.  The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  Id.  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that

7

would require trial.  Id.  If the nonmoving party cannot meet its burden, then the moving party is entitled to summary judgment as a matter of law.  NPC, Inc. v. International Precast Supply, Inc., 337 F.Supp.2d 378, 380 (D.N.H. 2004).  In other words, summary judgment is appropriate when no jury could return a verdict for the nonmoving party.  Trombley v. New England Telephone & Telegraph Co., 89 F.Supp.2d 158, 162 (D.N.H. 2000).  With respect to coverage obligations from a liability insurance policy, the insurer bears the burden of proof concerning coverage pursuant to N.H. R.S.A. 491:22-a.

A genuine issue is one that properly can be resolved only by a finder of fact because it may be reasonably resolved in favor of either party.  NPC, Inc., 337 F.Supp.2d at 379.  A material fact is one that affects the outcome of the suit.  Id. at 379–80.  If, however, the nonmoving party's evidence is merely colorable or is not significantly probative, no genuine dispute as to a material fact has been proved and summary judgment may be granted.  Pimental, 236 F.Supp.2d at 179.

## ARGUMENT

I.     **The Designated Operations Endorsement does not limit coverage for SBP Builder's Work which resulted in the fire.**

The Century policy Century Commercial Lines policy number CCP1096813 includes the Commercial General Liability Coverage Form, Form Number CG 00 01 04 13, which states, in part:

> **SECTION I - COVERAGES**
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> **a. We will pay those sums that the insured becomes legally obligated to pay as damages because** of "bodily injury" or "**property damage**" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. (emphasis added).

SMF Ex. D, Form Number CG 00 01 04 13, Page 1 of 16.

8

A Stipulation for Entry of Judgment was filed against SBP Builders on December 8, 2025, in the amount of $2,000,000.  SMF Ex. J.  This Court issued the Judgment against SBP Builders in the amount of $2,000,000 on December 11, 2025, as approved by Chief Judge Samantha Elliot. SMF Ex. K.  The entry of Judgment qualifies as a "sum" that the insured (SBP Builders) became legally obligated to pay as damages on December 11, 2025.  The damages that were ordered were because of "property damage" which were caused by fire that was caused by SBP Builders acts at 433 Cottage Street, Littleton, New Hampshire, but which also damaged 431 Cottage Street, Littleton, New Hampshire. SMF Ex. A, ¶¶ 10, 12; See also SMF Ex. C, ¶ 13-16.

The Century policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."  SMF Ex. D, Section V, Definitions.  Acadia alleged, and SBP Builders agreed in the release, that the entry of Judgment and "sums" owed are sums in relation to "property damage", thereby triggering coverage under its policy.

The burden of proving that no insurance coverage exists rests squarely with the insurer. Curtis v. Guar. Tr. Life Ins. Co., 132 N.H. 337, 340 (1989).  See also, N.H. Rev. Stat. Ann. § 491:22-a.  Century maintains that no insurance coverage exists and therefore bears the burden to establish that the claim falls outside of its policy of insurance.  SMF Ex. A, ¶ 36.  In its first cause of action, Century implies that coverage is triggered under the commercial general liability policy but rests its first argument upon the position that the Limitation of Coverage to Designated Operations, Premises and Projects endorsement ("Designated Operations endorsement") excludes coverage owed to SBP Builders. SMF Ex. A, ¶¶ 37-46.  Although an insurer has a right to contractually limit the extent of its liability, it must do so "through clear and unambiguous policy language". Curtis at 340.  Ambiguity exists if "reasonable disagreement

9

between contracting parties" leads to at least two interpretations of the language.  Colony Ins.

Co. v. Dover Indoor Climbing Gym, 158 N.H. 628, 630 (2009); see also, Int'l Surplus Lines Ins.

Co. v. Manufacturers & Merchants Mut. Ins. Co., 140 N.H. 15, 20 (1995).  If the language relied

upon by Century is ambiguous, and one of the reasonable interpretations of the language favors

SBP Builders, the ambiguity must be construed against the insurer and in favor of coverage for

SBP Builders and Acadia, as its assignee. Id.

The Designated Operations endorsement, form number CGL 1711 0120, modifies

Century's Commercial General Liability Coverage Form.   The endorsement deletes Paragraph

**1.b** under Section I-Coverages, Coverage A-Bodily Injury and Property Damage Liability. It

replaced the paragraph with new paragraph **1.b** which states:

> **1.** Paragraph **1.b.** under Section I — Coverages, Coverage **A —** Bodily Injury and Property Damage Liability is deleted in its entirety and replaced by the following:
> **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:
> **(1)** The "bodily injury" or "property damage":
> (a)  Arises out of any operation(s) shown in the Schedule above: and
> (b)  Occurs on the premises, if scheduled above. or the grounds and structures appurtenant to those premises; and
> (c)  Arises out of any project(s). if scheduled above; and
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period: and
> **(3)** Prior to the policy period. no insured listed under paragraph **1 .,** of Section **II —** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim. knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period. that the "bodily injury" or "property damage" occurred. then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
…

SMF Ex. D., Limitation of Coverage to Designated Operations, Premises and Projects

endorsement.

10

The schedule of operations on the endorsement provides:

**SCHEDULE**

| | |
|---|---|
| **Operation(s):** Insured provides lawn care services, snow and ice removal, and real estate property management including all subcontracted work pertaining to these operations. | |
| **Premises:** | |
| **Project(s):** | |

The scheduled operations identifies those operations performed by SBP Property Management, but it does not include any of the operations performed by SBP Builders.   In his deposition testimony, Stanley Barros Parker, III, testified that he is the owner of SBP Builders, a general construction business involved in both commercial and residential construction, but that he also owns SBP Management, a company that manages buildings and clients for owners of properties. SMF Ex. M, Page 7, Lines 9-16 to Page 8, Line 21.  Mr. Parker testified that SBP Management provides management for residential dwellings which are not owned by him or his companies. Id. 100% of SBP Management's subcontract work was sent exclusively to SBP Builders. It should also be noted that the Designated Operations Endorsement does specifically list "real estate property management activities including subcontracted work" as an approved operation and Century cannot, as a matter of law, carry its burden to establish the work performed was not part of such an operation by either SBP Builders or SBP Property Management.

The Designated Operations Endorsement provides that "**[C]overage for any Operations, Premises, or Project(s) not shown above can only be covered if agreed to, <u>in writing, by us as evidenced by endorsement to this policy</u>**." (bolding in original, underlining emphasis added). SMF Ex. D., Limitation of Coverage to Designated Operations, Premises and Projects endorsement.   While the endorsement attempts to limit coverage to scheduled operations, it

11

acknowledges that coverage for **Operations, Premises, or Project(s)**, not listed in the schedule can be provided if agreed to in writing by Century.  While an endorsement to the policy may be evidence of an agreement to expand coverage, a formal endorsement to the policy is not required.  To the contrary, to provide coverage for **Operations, Premises, or Project(s)** not listed in the policy, it must only be agreed to in writing by Century.  An endorsement is one way to manifest an intent to provide coverage under the policy, but it is not the only "writing" which it may be "evidence" of coverage.

The Century Policy contains a Schedule of Forms and Endorsements at form CIL 15 00b 02 02 which identifies the various coverage forms and policy endorsements contained on the policy. (See below).  The Forms listed on this Schedule of Forms and Endorsements applicable to the General Liability Coverage include 61 forms, one of which is the Limitation of Coverage to Designated Operations, Premises or Projects, form number CGL 1711 01 20, relied upon by Century:



…

The same Schedule of Forms and Endorsements applicable to the General Liability Coverage, however, also includes the Century Surety Company Commercial General Liability Coverage Part Declarations, Form CGL 1500 04 07:

CGL    1500    04 07        Century Surety Company Commercial General Liability Coverage Part Declarations

SMF Ex. D, Commercial General Liability Coverage Part Declarations.

The Century Surety Company Commercial General Liability Coverage Part Declarations, form

number CGL 1500 04 07, reads, in part:

## Century Surety Company
### COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy No:  CCP  1096813                    Effective Date: 11/01/2022    **
                                            12:01 A.M. Standard Time

**NAMED INSURED:** SBP Builders LLC AND SBP Property Management LLC

**LIMITS OF INSURANCE:**

| | | |
|---|---|---|
| General Aggregate Limit (Other than Product-Completed Operations) | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented to You | $ | 100,000 | Any one Fire/ Occurrence |
| Medical Expense Limit | $ | 5,000 | Any one Person |

**RETROACTIVE DATE: (CG 00 02, CGL 0002, CGL 1551 or CGL 1553)**

Coverage A and B of this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", "personal injury" or "advertising injury" which occurs before the retroactive date shown here: N/A

**DEDUCTIBLE:** Per Claim
$    1000        Bodily Injury Liability & Property Damage Liability Combined
(this deductible also applies to Personal and Advertising Injury Liability.)

Deductible also applies to Supplementary Payments - Coverages A and B;
Defense Expenses Coverages A and B (form CGL 0002 only)    ☒ Yes    ☐ No

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**

1)    423 Cottage Street                        Littleton        NH    03561

| PREMIUM St/Terr Code | Classification | | Prem. Basis | RATE: Prem. Ops. Pr/Co | ADVANCED PREMIUM Pr/Co | All Other |
|---|---|---|---|---|---|---|
| NH 001 91583 | Contractors-subcontracted work-in connection with building construction, reconstruction, repair or erection-one or two family dwellings | c) | | | | |
| NH 001 97050 | Lawn Care Services | p) | | | | |
| NH 001 47052 | Real Estate Property Managed | s) | | | | |
| NH 001 99310 | Snow and Ice Removal-Contractor | p) | | | | |
| 49950 | Additional Insured - Owners, Lessees or Contractors-Scheduled Person or Organization - (Fully Earned) | | | | $ | 0 |
| 44444 | Waiver of Transfer of Rights of Recovery Against Others to Us - (Fully Earned) | | | | $ | 0 |

Century Surety Company Commercial General Liability Coverage Part Declarations,

form number CGL 1500 04 07, identifies the three operations identified on the Designated

Operations endorsement, listed as Lawn Care Services, Real Estate Property Managed, and Snow

13

and Ice Removal- Contractor.  These classifications include work performed by SBP Property Management as part of its residential property management business. SMF, Ex. M, Page 7, Lines 9-16 to Page 8, Line 21.  In addition, the Declarations also identify Classification code "91583—Contractors-subcontracted work-in connection with building **construction, reconstruction, repair** or erection-one- or two family dwellings" (emphasis added).  This classification includes the operations that SBP Builders engaged in as part of its commercial and residential construction business. SMF, Ex. M, Page 7, Lines 9-16 to Page 8, Line 21.

Robert Cardinal was deposed in the Acadia Action and testified that he was the employee who was working staining doors and door jambs for SBP Builders on the date of the fire and that he was the individual who was using oil soaked rags for staining applications SMF Ex. L, Page 26, Lines 23-25 – Page 30, Line 12.  It cannot be reasonably disputed that Robert Cardinal was the SBP Builders employee who allegedly improperly disposed of rags used to stain doors and that the work was in relation to the construction, reconstruction or repair of a one or two family dwelling.   SMF Ex. C, ¶¶ 12-16.  The Contractors classification, code 91583, is identified in the Century Surety Company Commercial General Liability Coverage Part Declarations, form number CGL 1500 04 07, which is included in the policy and qualifies as a "form and endorsement" applicable to the Century policy. The form satisfies the Designed Operations Endorsement exception for coverage of operations not shown when "agreed to, in writing" by Century.  Therefore, SBP Builder's staining and construction work is expressly identified as an operation which Century agreed in writing to cover as evidenced by the Policy Declarations incorporated in and specifically identified in the policy.

In addition to the Policy Declaration Form/Endorsement which expressly identifies building construction/repair or reconstruction as one of multiple operations SBP Builders

14

performs, the policy as a whole recognizes that it insured construction related risks as evidenced by the decision to add numerous construction related limiting endorsements.  If construction related work was not intended to be covered under the policy, there would be no reason to include the numerous construction related endorsements, as SBP Builders was the only insured involved in construction work. For example, the policy includes the following endorsements:

- **Contractors Amendatory Endorsement**, form number CBL 1901 0216, which governs the priority of coverage for "Contractors";

- **Exclusion-Contractors Professional Liability** endorsement, form number CBL 1906 0316, which adds an exclusion for Contractors Professional Liability claims;

- **Failure to Complete Your Work Exclusion** endorsement, form number CBL 1907 0518, which adds an exclusion for the costs or expense caused by the insured's failure to complete its work;

- **Exclusion- Construction Management**, form number CBL 1914 0316, which adds an exclusion for "property damage" arising out of an insured acting as a construction management or consultant architect;

- **Limitation-Weather-Related Water Damage to Work in Progress**, form number, CBL 1910 1116, which adds an exclusion for weather related water damage to work in progress for "claims, arising out of property damage to any building or structure or at any property within such building or structure before 'your work' is completed resulting from, caused by or arising out of precipitation or any other form of moisture during the course of 'your work';

15

- **Exclusion-Rip and Tear**, form number CBL 1933 0316, which adds an exclusion for "property damage" arising from ripping and tearing or restoration expenses; and

- **Exclusion-Exterior Insulation and Finish Systems and Direct Applied Exterior Finish Systems**, form number CBL 2186 0316, excludes coverage for "property damage" arising out of the use of an exterior insulation and finish or a direct applied exterior finish system;

SMF Ex. D.

If, as Century asserts in its Declaratory Judgment action, the policy provides no coverage for construction or contractor related operations, there would have been no reason to include the foregoing additional forms and endorsements as SBP Builders is the only entity which performs construction related work.

An insurer has a right to contractually limit the extent of its liability, it must do so "through clear and unambiguous policy language. Curtis v. Guar. Tr. Life Ins. Co., 132 N.H. 337, 340 (1989). Given the totality of the policy forms, including those cited, there is, at the least, a "reasonable disagreement between contracting parties" relating to whether the Century policy was intended to provide coverage for contractor and subcontractor related work. Century agreed to provide coverage and endorsements related to construction work and which would have no involvement with Lawn Care Services, Real Estate Property Managed, and Snow and Ice Removal- Contractor classifications. The only reasonable interpretation is that Century intended to provide coverage for the contractor related services, unless otherwise excluded by the numerous construction related endorsements on the policy. Century is therefore unable, as a matter of law, to establish that coverage does not apply and cannot carry its burden under N.H.

R.S.A. 491:22-a. Therefore, Acadia is entitled to summary judgment and requests a ruling from this Court that coverage is triggered under the Commercial General Liability policy and not excluded by the Designated Operations endorsement. SMF Ex. D., Limitation of Coverage to Designated Operations, Premises and Projects endorsement.  The damage alleged in the subrogation action and subsequently entered as a judgment against SBP Builders qualifies as property damage caused by the negligent acts of SBP Builders in performing its work. The work performed by SBP Builders is a risk contemplated by Century in issuing the policy to SBP Builders.

Acadia anticipates that Century will object to the Motion for Summary Judgment on the basis that it seeks discovery into the Acadia Action as it has recently propounded discovery upon Acadia. However, all relevant facts are undisputed and an objection on the basis to seek discovery of the Acadia Action ignores the pertinent legal issues which this Court is asked to address.  Discovery sought into the underlying matter may only be used to resolve any ambiguity found in the Century Policy.  The Petition for Declaratory Judgment does not allege that the policy is ambiguous. To the contrary, Century argues that coverage is unambiguously excluded under the policy.  It is Acadia's position that the policy unequivocally contemplates insuring the risk of a contractor negligently disposing of oily rags.  There is no ambiguity in the Century policy and even if there were, all ambiguity is construed against Century and in favor of coverage for the judgment entered against SBP Builders. Therefore, an objection based upon the purported need to conduct discovery only serves to needlessly delay the Court's proper determination based upon a plain reading of the policy as applied to the judgment entered against SBP Builders. Century seeks to conduct discovery of extrinsic evidence to presumably demonstrate some form of mistake in the policy procurement process. However, Century elected

17

to file this Petition for Declaratory Judgment rather than an action to rescind the policy. When an insurance policy leaves uncertain the parties' mutual intent, extrinsic evidence is irrelevant to the determination before the Court.  MacLeod v. Chalet Susse Int'l, Inc., 119 N.H. 238, 243 (1979); See also, Spectrum Enters., Inc. v. Helm Corp., 114 N.H. 773, 776 (1974).  The only issue to be determined by this Court is whether the entry of judgment against SBP Builders triggers coverage under the Century policy. There is no need to look beyond the four corners of the Century insuring agreement and the entry of judgment.  Permitting discovery into evidence outside the policy and the judgment only serves to cause annoyance and undue burden or expenses upon Acadia and SBP Builders.

   As such, discovery into the policy procurement process has no bearing on a determination of whether coverage under that policy is triggered.  There is no genuine issue of material fact at issue relating to whether or not coverage is excluded under the Designated Operations endorsement and therefore the grant of summary judgment is proper and a question of law for this Court to decide.  Everitt v. Gen. Elec. Co., 156 N.H. 202, 209 (2007); see also, Godbout v. Lloyd's Ins. Syndicates Messrs. Mendes & Mount, 150 N.H. 103, 105 (2003).

**II.      Century's $100,000 sub-limit does not apply to damage to 431 Cottage Street.**

   The Century policy was issued to both SBP Builders and SBP Property Management as named insureds.  The Century Declaration page indicates limits of liability coverage of $2 million subject to a $1 million per occurrence limit.  The insuring agreement states that Century will pay those sums that the insured, SBP Builders or SBP Property Management, becomes legally obligated to pay as damages because of property damage to which this insurance applies. The Declaration page indicates there is a $100,000 limit for any one fire/occurrence for "Damage to Premises Rented to You":

**Century Surety Company**
COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy No: CCP 1096813

Effective Date: 11/01/2022  **
12:01 A.M. Standard Time

NAMED INSURED: SBP Builders LLC AND SBP Property Management LLC

| LIMITS OF INSURANCE: | | |
|---|---|---|
| General Aggregate Limit (Other than Product-Completed Operations) | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented to You | $ | 100,000 | Any one Fire/ Occurrence |

Century maintains that even if coverage is not excluded pursuant to the Designated

Operations endorsement discussed above, that the Section III – Limits of Insurance Liability

language in paragraph 6 restricts the coverage which it must pay to $100,000 because part of the

subrogated damages include damage to the property SBP Builders was renting.

Commercial General Liability Coverage Form, Form Number CG 00 01 04 13, includes

exclusion j., Damage to Property, which reads in part:

**2. Exclusions**
This insurance does not apply to:

**j. Damage To Property**
  "Property damage" to:

  (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

…

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** — Limits Of Insurance.

…

SMF Ex. D, Form Number CG 00 01 04 13, Page 4-5 of 16.

The Century policy states that Exclusion j. (1) does not apply to property damage (other

than damage by fire) to premises including the contents of such premises rented to you for a

19

period of seven or fewer consecutive days.  A separate limit of insurance applies to Damage to

Premises Rented To You as described in Section III Limits of Insurance.

Section III, Limits of Insurance provides:

> **SECTION III - LIMITS OF INSURANCE**
> **1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will
>     pay regardless of the number of:
>> a. Insureds;
>> b. Claims made or "suits" brought; or
>> c. Persons or organizations making claims or bringing "suits".
> …
>
> **3**. The Products-Completed Operations Aggregate Limit is the most we will pay under
>     Coverage **A** for damages because of "bodily injury" and "property damage" included in the
>     "products-completed operations hazard".
> …
> **5.** Subject to Paragraph **2.** or 3. above, whichever applies, the Each Occurrence Limit is the
>     most we will pay for the sum of:
>> a. Damages under Coverage **A;** and
>> b. Medical expenses under Coverage **C**
>>
>> because of all "bodily injury" and "property damage" arising out of any one
>> "occurrence".
>
> **6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most
>     we will pay under Coverage **A** for damages because of "property damage" to any one
>     premises, while rented to you, or in the case of damage by fire, while rented to you or
>     temporarily occupied by you with permission of the owner.

SMF Ex. D, Form Number CG 00 01 04 13, Page 11 of 16.

The owned property exclusion is regularly enforced by the New Hampshire Courts.  The

primary function of the exclusion for property owned, rented or occupied by the insured, is to

prevent the insured from using a liability insurance policy as if it provided property insurance

and to insulate the carrier against a moral hazard problem where an insured has less incentive to

take precaution owing to the existence of insurance.  Dryden Oil Co. of New England, Inc. v.

Travelers Indem. Co., 91 F.3d 278, 284 (1st Cir. 1996).

In Cam-Sam Real Estate Holdings, LLC v. Merchants Mut. Ins. Co., 2019 WL 2931648

(D. N.H. 2019), the Federal District Court, applying New Hampshire law, enforced the owned,

rented or occupied exclusion and denied liability coverage.  In that case, Cam-Sam was the owner of a multi-unit commercial building in Hooksett, New Hampshire.  Cam-Sam rented unit 1 of the building to D La Pooch for a pet daycare and grooming business.  D La Pooch obtained insurance from Sentinel.  Cam-Sam sued D La Pooch asserting claims of negligence and breach of contract for property damage due to pet urine and feces requiring building remediation, mold and bacteria, and shot blasting the concrete floor.  Sentinel's CGL contained a similar exclusion for property damage to property the named insured owns, rents or occupies.  That exclusion, K (1) did not apply to property damage (other than damage by fire) to premises, including the contents of such premises rented to you for a period of seven or fewer consecutive days.  A separate limit of insurance applies to damage to premises rented to you as described in Section D – Limit of Insurance.  D La Pooch rented the premises for more than seven days.  Sentinel's Declaration Page did not contain a sub-limit for damage to premises rented to you, but did refer to the exclusions, including the owned or leased premise exclusion.  The Federal Court found exclusion k (1) precluded liability coverage for damage to the premises D La Pooch rented.  The Court cited a number of cases enforcing the owned property exclusion to preclude coverage for damage to the insured's property or property within its control.

Century is relying upon the Declarations sublimit for the "owned, rented or occupied premises" exclusion to deny liability coverage to the entire building—which SBP Builders did not own, rent or occupy.  The few courts that have addressed carrier efforts to apply the owned property exclusion to property damage to both rented and non-rented premises have restricted the exclusion to only that portion of the damaged building actually occupied or rented by the named insured.

21

For example, in <u>Charter Oak Fire Ins. Co. v. Coleman</u>, 273 F. Supp.2d 903 (W.D. Ky. 2003), a Federal District Court applying Kentucky law, limited the exclusion for property damage to property the insured rents or occupies to just the leased premises and not the entire damaged building.  In that case, Essex issued a Commercial General Liability policy to Coleman and Coleman leased commercial space in a building owned by Mr. Parrot.  There were multiple tenants/units in the building.  One of Coleman's employees caused a fire which caused damage to the entire building.  The building was insured by Charter Oak, which filed a subrogation action against Coleman.  Coleman's insurer, Essex, filed a DJ action taking the position that even if Coleman was liable for the fire, the Essex policy did not provide liability coverage because of the owned property exclusion.  The exclusionary language in the Essex policy is similar to that in the Century policy.  It provided "[T]he fire damage limit is the most we will pay under Coverage A for damages because of 'property damage' to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire."  Although the Federal District Court found the purpose of the exclusion was to prevent an insured from relying upon a liability policy as a property policy it further found the individual fire damage limit "applies only to damage done to the insured's property, and does not apply to the damage done to other property as a result of a fire."  The Court noted that if Essex had wanted to exclude all coverage for fire damage arising out of its insured rental of any of the premises, it would have been easy to do so.

The Kentucky Federal District Court in <u>Charter Oak</u> cited a Federal District Court decision applying Pennsylvania law, <u>USF Ins. Co. v. Mr. Dollar, Inc</u>., 175 F. Supp.2d 748 (E.D. Pa. 2001).  In that case, Mr. Dollar, insured by USF, rented a rental unit from Mr. Yoo.  Mr. Dollar's unit was one of several units in Yoo's building.  A fire occurred in the unit leased by Mr.

22

Dollar, damaging his unit as well as other parts of the building.  Mr. Dollar's carrier, USF, determined that its liability on Dollar's behalf was limited to $50,000 under the separate fire sublimit for damage to premises rented to the insured.  USF filed a DJ action and asked the Court to declare that the maximum coverage afforded to Mr. Dollar under the policy was $50,000 sublimit.  Mr. Dollar counterclaimed and argued that USF had breached the policy by failing to pay the total fire damages which exceeded $350,000.  USF did not dispute Yoo's interpretation of the policy, but rather disputed whether it owed the entire confessed judgment, which presumably included compensation for both damage to the store leased by Mr. Dollar, as well as damage to the rest of Yoo's building.  The Court agreed the exclusion limited the scope of recoverable damages to the premises Mr. Dollar rented, but did not apply to the remaining damages.

Finally in <u>Mutual of Enumclaw Ins. Co. v. Ensign Traders</u>, LLC, 2015 WL 1401693 (D. Utah March 26, 2015) a Federal District Court applying Utah law addressed the purpose of the "damage by fire to premises while rented to you" exclusion in a dispute as to whether it could be extended to personal property damage.  In dicta the Court noted, "[I]t is clear that the Policy language stating "damage by fire to premises while rented to you" **is limited to fire damage to the building or real property that the insured had rented** and cannot be extended to damage to personal property. (emphasis added). Furthermore, other provisions in the Policy reinforce the limited scope of the negation clause and demonstrate that the clause only restores coverage to fire damaged to rented premises. The "Limits of Insurance" provision in the Policy, which is explicitly referenced in the negation clause, states that the coverage is limited to "Damage to Premises Rented to You". **This language restricts the coverage to the rented premises.** (emphasis added).  Moreover, the provision further states that the coverage provided is for "damage because of 'property damage' to any one premises, while rented to you...."  <u>Mut. of</u>

23

Enumclaw Ins. Co. v. Ensign Traders, LLC, No. 2:13-CV-00865-DN, 2015 WL 1401693, at *4 (D. Utah Mar. 26, 2015).

Although the New Hampshire Supreme Court has not interpreted the sublimit language for fire damage to property "while rented to you" coverage is favored when an exclusion is subject to more than one reasonable interpretation and one of those interpretations provides coverage. Cogswell Farm Condominium Assoc. v. Tower Group, Inc., 167 N.H. 245, 252 (2015). Exclusion j.(6) which excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because '[Lemery's] work' was incorrectly performed on it" was limited to the defective work and not consequential damages. Based upon the Limits language and the few foreign courts interpreting it, the $100,000 sublimit applies only to the fire damage to the real property leased by SBP Builders at 433 Cottage Street, while the remaining fire damage to 431 Cottage Street is subject to the $1 million dollar liability limits. Acadia acknowledges that the Century policy limits coverage for 433 Cottage Street to $100,000. However, the undisputed material facts establish that SBP Builders did not lease 431 Cottage Street and therefore coverage for that portion of the premises is only limited by the $1,000,000 liability limit.

## CONCLUSION

Acadia is entitled to Summary Judgment because there are no material facts in dispute and the facts and case law establish that coverage is triggered under its policy. Given the totality of the policy forms, including those cited, there is, at the least, a "reasonable disagreement between contracting parties" relating to whether the Century policy was intended to provide coverage for contractor and subcontractor related work. The only reasonable interpretation is that Century intended to provide coverage for the contractor-related services, unless otherwise

24

excluded by the numerous construction-related endorsements on the policy. Century is therefore unable, as a matter of law, to establish that coverage does not apply and therefore Acadia is entitled to summary judgment in finding that coverage for SBP Builders is triggered. Additionally, while coverage to 433 Cottage Street is limited to $100,000, the only limitation for coverage for damage to 431 Cottage Street is the general $1,000,000 policy limit on the Century policy. There are no material facts in dispute and Acadia is therefore entitled to summary judgment in declaring that coverage for damage to 431 Cottage Street is triggered, up to $1,000,000.

WHEREFORE, for the reasons set forth above, Acadia respectfully request that this Court enter Summary Judgment in favor of Respondents, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,
Acadia Insurance Company a/a/o
SBP Builders, LLC and Acadia Insurance
Company a/s/o New England Truck Tire
Centers, Inc. and a/s/o ADS Properties, Inc.,

By Its Attorneys,
Primmer Piper Eggleston & Cramer, PC

Dated: May 5, 2026                    By:    /s/ Doreen F. Connor
                                             Doreen F. Connor, #421
                                             PO Box 3600
                                             Manchester, NH  03105
                                             603-626-3300
                                             Dconnor@primmer.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was this day forwarded to all counsel of record via the Court's electronic filing system.

/s/ Doreen F. Connor
Doreen F. Connor