# Exhibit I

## RELEASE OF CLAIMS AND SETTLEMENT AGREEMENT

This Release of Claims and Settlement Agreement ("Agreement") is made and entered into by Releasors Acadia Insurance Company, New England Truck Tire Centers, Inc., ADS Properties, Inc. ("Releasors" or "Plaintiffs"), and Defendant SBP Builders, LLC in the action docketed in the United States District Court for the District of New Hampshire, bearing Case No. 1:25-cv-00092-SE-TSM, and captioned *Acadia Insurance Company a/s/o New England Truck Tire Centers, Inc. et. al. v. SBP Builders, LLC* (the "Lawsuit").

In exchange for valuable consideration detailed below, Releasors release SBP Builders LLC, SBP Property Management LLC, SBP Investment Property LLC, Stanley Barrows Parker III, Crum and Forster Specialty Insurance Company (via Policy Number BAK-53731-4) and their legal representatives, agents, employees and former employees, officers, directors, subsidiaries, parents, corporate affiliates, related companies, related agencies, contractors, independent contractors, insurers, attorneys, and their successors, heirs and assigns (collectively the "Releasees") from any and all claims debts, demands, causes of action, bills, liabilities, suits, accounts, covenants, warranties, contracts, torts, agreements, damages, duties, and obligations of any kind and character whatsoever arising from, related to, or in connection with the fire that is the subject of the Lawsuit, including, without limitation those which have been or could have been brought in the Lawsuit, claims for attorney's fees and costs, counterclaims, and all liabilities whatsoever, of every type and nature, both in law and in equity, known or unknown, asserted or unasserted, from the beginning of time to the Effective Date of this Agreement; provided, however, that the release described in this paragraph shall not be effective unless and until the Settlement Payments are received in good funds by Releasors.

It is the intention of all Parties to this Agreement that, notwithstanding provisions, rights, and benefits conferred by law, and notwithstanding the possibility that they may discover or gain a more complete understanding of the facts, events, or law that, if presently known or fully understood, would have affected the decision to enter into this Agreement, any and all claims shall be fully, finally, and forever settled. The Parties acknowledge that the inclusion of these unknown and future claims in the Releases provided for herein was separately bargained for and is a key element of this Agreement.

## RECITALS

**WHEREAS,** SBP Builders LLC, SBP Property Management LLC, and SBP Investment Property LLC are limited liability companies owned by Stanley Barrows Parker III ("Parker LLC's");

**WHEREAS,** on March 13, 2023, ADS Properties, Inc. owned the property located at 431-433 Cottage Street, Littleton, New Hampshire ("Loss Location");

**WHEREAS,** on March 13, 2023, New England Truck Tire Centers, Inc. was a tenant of ADS Properties, Inc. at 431 Cottage Street, Littleton, New Hampshire;

1

**WHEREAS,** on March 13, 2023, Acadia Insurance Company insured ADS Properties, Inc. via Policy NO. CPA 0349108-22;

**WHEREAS,** on March 13, 2023, Acadia Insurance Company insured New England Truck Tire Centers, Inc. via Policy No. CPA 0349108-22;

**WHEREAS,** on March 13, 2023, SBP Builders LLC was a tenant of ADS Properties, Inc. at 433 Cottage Street, Littleton, New Hampshire;

**WHEREAS,** it is alleged in the Lawsuit filed by Plaintiffs that SBP Builder LLC's negligence caused a fire on March 13, 2023 (the "Incident") that resulted in property damages to the Loss Location;

**WHEREAS,** total damages asserted by Plaintiffs in the Lawsuit are in excess of $2,300,000;

**WHEREAS,** the Parker LLC's all worked out of the Loss Location at the time of the Incident;

**WHEREAS,** at the time of the Incident, SBP Builders LLC was a named insured in an insurance policy issued by Crum and Forster Specialty Insurance Company, Policy Number BAK-53731-4, with Commercial General Liability Coverage limits of $1,000,000;

**WHEREAS,** Crum and Forster Specialty Insurance Company and SBP Builders' retained counsel have determined that SBP Builders LLC has significant excess exposure in the lawsuit exceeding the policy limits, and as a result, Crum and Forster has tendered its Commercial General Liability Coverage limits of $1,000,000 toward settlement;

**WHEREAS,** at the time of the Incident, SBP Builders LLC and SBP Property Management LLC were insured by Century Surety Company, via Policy Number CCP 1096813, with Commercial General Liability Coverage limits of $1,000,000;

**WHEREAS,** via correspondence sent to SBP Builders LLC and SBP Property Management LLC on or around May 9, 2023 and again to counsel for Releasors on September 2, 2025, Century Surety Company reserved its right to disclaim all coverage for SBP Builders LLC related to the Incident.

**WHEREAS,** on October 28, 2025, Century Surety filed a Declaratory Judgment action in the United States District Court for the District of New Hampshire against SBP Builders LLC seeking a declaration that its policy with SBP Builders LLC afforded no coverage for liability arising out of the lawsuit;

**WHEREAS,** Century Surety Company's disclaimer of coverage has left Stanley Barrows Parker III and the Parker LLC's at risk of a significant excess exposure of damages that could exceed $2,300,000;

**WHEREAS**, Stanley Barrows Parker III is desirous of settlement of all claims contained in the Lawsuit in order to protect himself individually and protect the interests of the Parker LLC's;

**WHEREAS**, Stanley Barrows Parker III has been advised by counsel that this Agreement is in the best interests of Stanley Barrows Parker III individually as well as the best interests of the Parker LLC's;

**NOW, THEREFORE**, Releasors have agreed to settle and compromise of all claims that have been asserted with, or that could potentially be asserted against the Parker LLC's and Stanley Barrows Parker LCC ("Releasees"), in the Lawsuit or otherwise, as follows:

1)    The Effective Date ("Effective Date") shall be the last date any individual counterpart of this Agreement is signed by any of the Parties.

2)    In addition to the valuable consideration described in Paragraph 3, Releasors agree to release Releasees for the sum of $1,000,000, payable to McCoy Leavitt Laskey Client Trust Account within 14 business days of the receipt of the fully executed Release of Claims and Settlement Agreement. In exchange for this valuable consideration, Releasors hereby release, discharge and acquit the Releasees of and from any cause of action that Releasors have, had, or may have, including without limitation those which arise from or are in any way related to the events described in the Lawsuit or relating in any way to the Incident. For the same consideration, Releasors further forever and completely releases, discharges and/or acquits the Releasees from any and all injuries, claims, remedies, demands, liens, actions, causes of action and suits for damages (actual and punitive), fees, penalties, costs, attorneys' fees, and expenses of every kind or nature whatsoever, whether known or unknown, anticipated or unanticipated, accrued or hereafter to accrue, caused by, resulting from, growing out of, or in any manner related to: 1) the Incident, and 2) any and all claims and remedies either made and sought in the Lawsuit or which could have been made and sought in the past or future against Releasees.

3) As additional good and valuable consideration, the Parker LLC's hereby assign to Releasors any and all of the rights Parker LLC's have or may have in the Century Surety Company policy of insurance Number CCP 1096813, with Commercial General Liability Coverage limits of $1,000,000. In addition, SBP Builder LLC agrees to allow judgment to be entered against them in the Lawsuit in the amount of $2,000,000 and will cause to be filed with the court the stipulated Judgment attached hereto as Exhibit A.

4) Other than matters asserted in the Lawsuit, each Party represents and affirms that he/she has not caused or permitted to be filed on his/her behalf, nor will he/she cause or permit to be filed, any charge, complaint, or proceeding in any forum against any Party hereto arising out of the Lawsuit.

5) It is the intention of all Parties to this Agreement that, notwithstanding provisions, rights, and benefits conferred by law, and notwithstanding the possibility that they may discover or gain a more complete understanding of the facts, events, or law that, if presently known or fully understood, would have affected the decision to enter into this Agreement, any and all claims shall be fully, finally, and forever settled. The Parties acknowledge that the inclusion of these unknown

3

and future claims in the Releases provided for herein was separately bargained for and is a key element of this Agreement.

6) Releasees have been advised by their counsel that agreeing to the $2,000,000 judgment in the Lawsuit is in its best interest in that the Releases risk of excess liability is reasonably clear. Releasees have also been advised that Releasors' alleged damages of $2,300,000 have been provided and established by admissible proof.

7) Releasors agree that after entry of the $2,000,000 judgment in the Lawsuit, satisfaction of said judgment will be limited to the remaining $1,000,000 insurance proceeds of the Century Surety Company policy limits if Releasors establish that Century Surety's coverage position is incorrect as a matter of law. Releasors further agree to not pursue Releasees personally for any excess damages.

8) It is the intent of Releasors per this Agreement to challenge the legality of Century Surety Company's coverage disclaimer within the context of the declaratory judgment case filed by Century Surety Company in the United States District Court for the District of New Hampshire, bearing Case No. 1:25-cv-00425-LM-TSM, and captioned *Century Surety Company v. SBP Builders LLC, et. al.*

9) Releasors hereby expressly covenant and agree that they will, at their own expense, defend, indemnify and hold harmless Releasees from any and all actions of persons or entities who have or may claim a right to any recovery on any theory in any way pertaining or relating to this settlement, the damages allegedly sustained by Releasors and/or the claims asserted or which could have been asserted in the Lawsuit. Releasors' agreement and obligation to defend, indemnify and hold harmless the Indemnitees includes, but is not limited to, all liens, claims, demands or other actions by any heirs, personal representatives, family members, attorneys, other individuals, municipalities that in any way pertain or relate to this Agreement, this settlement, the damages allegedly sustained by Releasors, and/or the claims asserted or which could have been asserted in the Lawsuit. Releasors shall pay and satisfy each such asserted lien, demand and claim, or satisfy the same on a compromise basis, and shall obtain in any event a release and discharge of the lien, demand and/or claim, and shall indemnify and hold harmless the Releasees from any costs, expenses, attorneys' fees, claims, actions, judgments or settlements resulting from the assertion or enforcement thereof.

10) This Release of Claims and Settlement Agreement and its terms shall be construed under New Hampshire law.

11) Releasors and Releasees agree that any and all disputes and claims arising from this Release must be brought in New Hampshire Superior Court.

12) This Agreement shall be construed, in any case where doubt may arise, in such a manner as will make it lawful and fully enforceable. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement. This Agreement is the product of informed negotiations between the Parties and their respective representatives, including counsel, and it shall not be

4

construed either in favor of or against any Party by virtue of any Party being deemed the drafter thereof.

13) This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective present and former employees, principals, agents, attorneys, partners, limited partners, managers, members, officers, directors, shareholders, investors, subsidiaries, affiliates, parent corporations, insurers, beneficiaries, heirs, successors, predecessors, assigns, and all the SBP Entities. The invalidity, illegality, or unenforceability of any provision or part of any provision of this Agreement under any law shall not affect the other provisions or parts of this Agreement, which shall remain in full force and effect.

14) The undersigned certify and acknowledge that, prior to signing, they have read this Agreement, which has been explained to them by their attorney, and they fully understand the same.

15) This Agreement may not be modified, assigned, or transferred, except with the written consent of all Parties.

16) All Parties represent and warrant that they have entered into this Agreement freely and without duress after having an opportunity to consult with professionals of their choice. Each of the Parties represents and warrants that no promise or agreement which is not expressly included herein has been made or relied upon in executing this Agreement. Releasees represent and warrant that they are not relying on any statement or representation by any agent of any other party. Releasees represent and warrant that they are relying on their own judgment and has had the opportunity to be represented by legal counsel in this matter and in negotiating and entering this Release.

17) Each of the Releasees represents and warrants that, as of the date of the execution of this Release of Claims and Settlement Agreement, such Releasee has the authority to execute the Release of Claims and Settlement Agreement, and that it is the real party in interest and has not sold, assigned, transferred, conveyed or otherwise disposed of any claims or demands relating to any right surrendered by the virtue of this Release of Claims and Settlement Agreement, and agrees to defend, indemnify and hold harmless any other Releasee against any claim that may arise if such is not the case.

18) Each of the Releasors represents and warrants that, as of the date of the execution of this Release of Claims and Settlement Agreement, such Releasor has the authority to execute the Release of Claims and Settlement Agreement, and that it is the real party in interest and has not sold, assigned, transferred, conveyed or otherwise disposed of any claims or demands relating to any right surrendered by the virtue of this Release of Claims and Settlement Agreement, and agrees to defend, indemnify and hold harmless any other Releasor against any claim that may arise if such is not the case.

19) Attorneys' Fees and Costs. The Parties shall bear their own attorneys' fees, expenses and costs incurred in connection with the preparation, execution and consummation of this Agreement, provided however, that in the event litigation is brought by any party to enforce the terms of this

5

costs incurred in connection with the preparation, execution and consummation of this Agreement, provided however, that in the event litigation is brought by any party to enforce the terms of this Agreement, or because of a default in payment, misrepresentation or breach by any party in connection with any of the provisions of this Agreement, and such party subsequently prevails in such litigation, the prevailing party shall be entitled to recover the attorneys' fees, expenses and costs it incurred in connection therewith, in addition to any other relief to which they may be entitled.

20) Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered, either by electronic mail or other means, to the other party.

21) The Parties agree to execute and deliver such other instruments and do such further acts and things as may be reasonably required to carry out the intent and purposes of this Release.

22) Confidentiality. All Parties hereto agree that the provisions, terms, and conditions of this Settlement Agreement are to be held in strict confidence. All Parties agree to refrain from disclosing to anyone, including the press, the public, and professional associations, the terms of this Settlement Agreement, except that any party may notify third parties that the Dispute has been settled. The Parties may disclose the existence, provisions, terms, or conditions of this Settlement Agreement to their respective attorney(s), tax and financial professionals, members of their immediate family, a bankruptcy trustee, or a court if it is reasonably necessary, or upon compulsory legal process. The Parties understand and agree that confidentiality is a material term of this Settlement Agreement and that any breach of confidentiality will constitute a material breach of this Settlement Agreement.

23) Non-Disparagement. For the consideration described herein, the Parties agree that no Party hereto shall make any statement, take any action or conduct in any way that adversely affects the reputation or goodwill of any other party hereto, or which could reasonably be expected to adversely affect any other party's personal or professional reputation (including the reputations of any of the directors, officers, agents or employees of any entity that is a party hereto). The Parties understand and agree that confidentiality is a material term of this Settlement Agreement and that any breach of this provision will constitute a material breach of this Settlement Agreement.

SBP Builders LLC

DATED: _Nov 3_ , 2025

By: _Stanley B Parker III_

6

Title: *Owner*

Acadia Insurance Company

DATED: _____, 2025

_____

By:


Title:


New England Truck Tire Centers, Inc.

DATED: _____, 2025

_____

By:


Title:


ADS Properties, Inc.

DATED: _____, 2025

_____

By:


Title:


7

Acadia Insurance Company

DATED: *November 3*, 2025

By: *Robert Ottaviano*

Title: *Sr. Subrogation Specialist*

New England Truck Tire Centers, Inc.

DATED: _____, 2025

By:

Title:

ADS Properties, Inc.

DATED: _____, 2025

By:

Title:

7

Acadia Insurance Company

DATED: _____, 2025

By: _____

Title:

New England Truck Tire Centers, Inc.

DATED: _November 3_, 2025

By: Rachel Stevens

Title: President

ADS Properties, Inc.

DATED: _November 3_, 2025

By: Rachel Stevens

Title: President

7